GULF, COLORADO & SANTA FE RAILWAY COMPANY V.
A. E. McCARTY ET AL.

No. 3287.

1. **Charge—Withdrawing Issue.**—In the charge of the court one alleged cause of action by the plaintiff was in effect withdrawn from the jury; they were instructed to find only upon another count. *Held,* that such withdrawal from the jury eliminated the count and the defense set up against it, and complaint can not be made that the defense to it was not presented in the charge. See charges.

2. **Case Adhered to.**—McCarty v. Railway, 79 Texas, 33, adhered to, in holding that a condition attached to a bill of lading that claim for loss, etc., should be made within forty days did not apply to damages resulting from a delay in furnishing cars for shipment, as was the duty of the railway company.

3. **Interest as Part of Damages.**—It was proper to instruct the jury to compute legal interest upon the amount of damages found from date of the loss. 65 Texas, 520.

4. **Value at Destination.** — Delay in shipment of cattle for market at Chicago. The railway company through its agent was informed of the purpose of shipment. *Held,* the damages should be computed at the difference in price of the cattle at the destination, and not at the place of shipment.

5. **Fact Case—Verdict.**—See facts held sufficient to sustain a verdict for $700 for expenses and diminished value in cattle offered for shipment, resulting from delay in furnishing railway cars.

6. **Waiver of Claim — Want of Consideration.** — A contract for shipment of cattle from Ballinger, Texas, to Chicago, was agreed upon at $102.50 per car load. Subsequently and upon the cattle being taken upon the cars a freight bill was signed containing waiver of certain claims by the shipper in favor of the carrier in consideration of reduced rates. No reduced freight charges were allowed. *Held,* there being no consideration for the waiver it would have no effect.

APPEAL from Ellis.   Tried below before Hon. ANSON RAINEY.
The opinion states the case.

*Alexander & Clark* and *J. W. Terry,* for appellant.—1. The contract limiting the liability of the railway company to injuries resulting upon its own line being valid, it was positive error for the court to fail to instruct the jury that appellant was not liable for injuries accruing be-

yond its own line, and such failure resulted in manifest injury to appellant.    Railway v. Adams, 78 Texas, 372; Rev. Stats., art. 1317; Ford v. McBryde, 45 Texas, 498; Barkley v. Tarrant, 53 Texas, 251; Railway v. Philips, 63 Texas, 590.

2.    It was the duty of the court to construe the contract in evidence and to have instructed the jury as to the effect thereof, viz., that the same was a release of the cause of action sued upon for the breach of the parol contract to furnish cars at Ballinger on September 24, 1887. San Antonio v. Lewis, 9 Texas, 69; Whitaker v. Bledsoe, 34 Texas, 402; Hough v. Hill, 47 Texas, 148; Scott v. Alford, 53 Texas, 82.

3.    The statute on the subject of interest (Rev. Stats., title 54) does not provide for interest on claims of this character, and at common law interest is not allowed in actions grounded on tort; and if there be exceptions to this rule, it is in cases based on trespass, conversion, fraud, or delinquency.   Close v. Fields, 13 Texas, 623; Heidenheimer v. Ellis, 67 Texas, 429.

4.    The measure of damages resulting to cattle from breach of contract to furnish cars on a certain day for their shipment is the extra expense incurred in holding the cattle and the difference in the market value of the cattle at the time and place when they should have been shipped and at the time and place where they were shipped.   3 Suth. on Dam., p. 210; Porter v. Burkett, 65 Texas, 383; Railway v. Mitchell, 75 Texas, 77.

*D. F. Singleton, G. C. Groce,* and *M. B. Templeton,* for appellees.

COLLARD, JUDGE, *Section A.*—This case was formerly on appeal to the Supreme Court, and will be found reported in 79 Texas, page 33.    The suit is upon two counts.    The first is upon a verbal contract between the parties, by which the defendant company, acting by its station agent at Ballinger, Texas, agreed to furnish plaintiffs cars to ship about 300 head of beef cattle to Chicago for market, on the 24th of September, 1887, defendant's agent being notified of the object in shipping.    It is alleged that defendant failed to furnish the cars until four days later than agreed—that is, on the 28th of September—causing heavy expense in holding the cattle, to-wit, $30 for pasturage, $30 for hands, $16 for horses; wasting and depreciation of the cattle ($2.50 per head), $750; decline in the market value at Chicago during the four days delay, $1428.

The second count charges that the cattle (302 head) were delivered to defendant on the 28th day of September, 1887, to be shipped to Chicago for market in a reasonable time; that there was an unreasonable delay en route to Chicago of seventy-two hours over defendant's road and connecting roads; that the cattle were roughly handled, so that

some of them died; they lost in weight; and the market declined 50 cents per hundred pounds.

Appellant (the railway company) answered, setting up the written contract of shipment as appears in the statement on former appeal, and filed a general denial.

The verbal contract was proved as alleged, as was its breach, the four days delay, the extra expense during detention, and some depreciation and decline in the market during the delay in awaiting the arrival of the cars. Defendant received the cattle on its cars on the 28th of September, carried them to McGregor, Texas, and delivered them to its connecting line at that place, on which they were transported to Chicago, arriving there on the 4th day of October, 1887, where they were on the next day put on the market and sold. It was proved that the time usually required in transit from Ballinger to Chicago was four days, and that the market in Chicago for such cattle had declined between the time they should have arrived, had they reached Chicago in usual time after shipment, and the time they did arrive. The trial resulted in a verdict and judgment for plaintiffs for $700, from which defendant appealed.

The first assignment of error is as follows: "The court erred in ignoring and wholly failing to submit in its charge to the jury the defense presented by defendant, viz., that the defendant, by virtue of the terms of the contract or bill of lading herein, was not liable for any delay, rough handling, or other damage occurring in transit after defendant delivered said cattle to its connecting carrier at McGregor, Texas. Plaintiff seeking to recover damages for delay and injury to cattle in transit, the jury should have been instructed that defendant was only liable for the delay and injury occurring on its line, the contract of shipment restricting defendant's liability to its own line."

The court did not charge upon the written contract at all, but in effect withdrew that branch of the case from the jury, so that plaintiffs could not under the instructions given recover for any damages occasioned or decline in the market price of the cattle by delay in transit. The charge of the court first explains to the jury the nature of the issues as made in the pleadings, and then proceeds as follows:

"You are instructed that if you believe from the evidence that plaintiffs contracted with defendant's agent at Ballinger that defendant would furnish cars to plaintiffs in which to ship cattle at a time certain, and that said agent had authority to so contract, and you further believe that defendant failed to receive and ship said cattle at the time agreed upon, and that by reason of the failure to receive and ship said cattle the plaintiffs were damaged, then plaintiffs are entitled to recover, unless you find that plaintiffs waived such damages under the instructions hereinafter given.

"If you find that plaintiffs were damaged by the failure of defendant to receive and ship said cattle at a certain time, you will follow the following rules in estimating the same: . If there was before the receiving and shipping of the cattle unreasonable or negligent delay on the part of defendant in receiving said cattle, then plaintiffs should recover the difference, if any, between the market value of the cattle when they should have arrived at their destination, had no delay occurred, and when they did arrive; and such damages, if any, the cattle may have sustained by reason of delay in receiving and shipping, and the extra expense, if any, occasioned to plaintiffs by such delay, provided the testimony shows, and only in that event, that the damages to said cattle, if any, and the extra expense, if any, was occasioned unnecessarily from the delay in receiving and shipping said cattle, and fairly entered into the contemplation of the parties to the contract at the time it was made."

Fairly construed, the court's charge withdrew from the consideration of the jury all issues of damages except such as may have been occasioned by detention of the cattle at Ballinger before shipment, and the decline in the market price at Chicago consequent upon that detention.

There was a stipulation in the written contract of shipment fixing forty days as the time in which suit should be brought after damages accrued, and if not so brought to be barred. There was no error in ignoring this provision of the contract, because (if there were no other reason) it applies to the written contract and can not be made to apply to the verbal contract, on which alone the recovery was had. McCarty v. Railway, supra. It was not error to fail to instruct the jury that the burden of proof was upon plaintiffs; no charge was asked upon the subject.

There was no error in instructing the jury to allow plaintiffs legal interest on the amount found as damages from the date they accrued. Railway v. Holliday, 65 Texas, 520, 521.

Appellant's proposition under the seventh and eighth assignments of error is, that the measure of damages for breach of contract to furnish cars for shipment of cattle, besides the extra expense in holding the cattle, is the difference in the market value of the same at the time and place when they should have been shipped and at the time and place when they were shipped. The court's direction on the subject was correct, that the place of destination should govern as to difference in values. It was alleged and proved that when the contract to furnish the cars was made the company's agent was notified that the cattle to be shipped were to be sold in Chicago. Railway v. Nicholson, 61 Texas, 491.

The ninth assignment of error relates to breach of the written contract and its forty days clause of limitation. For reasons before stated, this assignment need not be considered.

It is urged that the verdict is excessive, and should be set aside. Had the cattle been shipped from Ballinger on the evening of the 24th of September, when tendered to defendant, they would have arrived in Chicago in four days, the usual run—that is, on the evening of the 28th—and would have been ready for market on the 29th, when their market value as quoted in the cattle journals would have been $2.65 per hundred pounds. The evidence shows that only 292 head of them were sold, weighing in the aggregate 285,700 pounds, and brought only $6602.95; at $2.65 per hundred pounds they would have sold for $7571.05, or $968 more than they did bring. The damages for extra expense while detained at Ballinger was shown to be $95, which, upon such basis, would authorize a verdict of $1063. Had all the cattle sold at $2.40 per hundred pounds, the difference in values would have been $714.25, besides the $95 extra expense while detained at Ballinger. The verdict was for $700. There was other evidence as to values at different times, which would give different results, and would reduce the verdict below the amount awarded. The cattle arrived in Chicago on the 4th of October, and on the 5th, 105 head, weighing 102,860 pounds, were sold at $2.40 per hundred pounds, or at $2468.44. "These cattle would have sold on September 30 for 10 cents per hundred pounds more; had they been in the ordinary condition of cattle shipped from Texas they would have brought $2.60 per hundred pounds; as they were, they would have sold October 1 at $2.50 per hundred pounds. October 2 there was no market, it being Sunday; October 3, $2.40; October 4, $2.40. Forty head of the cattle, weight 40,830 pounds, were sold October 5 for $2.30 per hundred; 147 head more sold October 5 for $2.25 per hundred; weight, 142,010 pounds. These cattle would have sold as they were on September 30 for 10 to 15 cents per hundred pounds more."

The foregoing is quoted from the evidence as agreed on in the statement of facts. If we should be governed by it alone and the dates as given in estimating the difference in values, the verdict would appear to be excessive. This evidence does not, however, give the value of the cattle on the 29th of September, the day they would have arrived in Chicago if they had been shipped from Ballinger on the 24th of September and had arrived in the usual time. It is indefinite, and does not furnish a satisfactory basis of calculation. There was evidence, as before stated, which would warrant a recovery of an amount as great as the verdict, and we do not think we should say it was excessive.

Appellant's third and fourth assignments of error are presented together and will be so considered. They are as follows:

"3. The court erred in not construing the written contract pleaded in defense by defendant, and in not instructing the jury that by the execution of said contract and by making the agreement therein entered into the plaintiff had released the damages, if any, out of the breach of

the parol contract alleged to have been made by defendant's agent at Ballinger on the 18th day of September, 1887. The uncontroverted evidence showing that plaintiffs had released said damages, the verdict and judgment thereon are contrary to law and evidence.

"4. The court erred in failing to charge the jury upon the issue presented by the pleadings and the evidence, viz., that the plaintiffs, after making the parol contract sued upon, entered into a written contract, or bill of lading, with defendant, whereby plaintiffs released defendant from and waived all damages, if any accrued, from said parol contract to furnish cars. The fact that plaintiffs had released defendant from all damages on said parol contract having been pleaded, and the proof sustaining the plea, with no evidence to the contrary, it was the duty of the court to instruct the jury to find for the defendant."

The court did instruct the jury as follows: "If you believe from the evidence that at the time the parties contracted it was agreed and understood that plaintiffs would waive all right to recover damages of defendant, in consideration of defendant giving to plaintiffs a lower rate of freight on said cattle, and that a lower rate of freight was given, then plaintiffs can not recover." Taking the whole charge together, it should be inferred that this clause of it applied to the parol agreement with the agent by McCarty to receive and ship the stock, and that it was not intended to apply to the subsequent contract in the bill of lading. The bill of lading contained a waiver and release of defendant of liability for delay in shipping the stock after delivery to the agent, and on account of any delay in receiving the same after tender to the agent, in consideration of the rate of $102.50 per car from Ballinger to Chicago, which is stated in the bill of lading to be a special and reduced rate of freight. McCarty testified, that when he made the parol contract with the agent Le Grand to furnish the cars for shipping the cattle, the rate was then agreed on at $102.50 per car, and that "nothing was said about any written contract, waiver," etc. This was some ten days prior to the date of the written contract of shipment.

Le Grand, testifying for defendant, denies that he agreed to furnish cars at any specified time, but says nothing about the rate to be charged. There was no other evidence as to the rate fixed in the parol contract except that of McCarty. There was then in fact no consideration for the waiver as stated in the bill of lading as to delay in receiving and shipping the cattle by the agent at Ballinger. The principle in the court's charge upon this subject was correct, that if the waiver was without consideration it was not binding; but as before said, it seems the charge does not relate to the written contract. Had the court charged upon the release of liability for detention of the cattle at Ballinger, as contained in the written agreement, it would have been necessary also to have stated the law, that if it was without consideration it could not have effect, in which case the result under the evidence would have

been the same as if he had not submitted the question at all. Under the circumstances, it was not the duty of the court to notice this feature of the written agreement. Had defendant raised a submission of the question it should have been presented in a special charge. It has often been decided in this State that the mere omission of the court to instruct the jury upon an issue is not error where the charge given is correct. If it should be the duty of the court to interpret and construe documentary evidence, the failure to do so in this case could be no more than technical error, and harmless. The result would have been the same. The court could have assumed that there was no consideration for the written waiver as to damages for detention at Ballinger.

Finding no error, we conclude the judgment should be affirmed.

*Affirmed.*